**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TERESA WHITE,**

**Plaintiff,** :

**v.**

**ROTO-ROOTER SERVICES COMPANY,** :

**Defendant.**

**Case No. 2:25-cv-710**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

Teresa White discovered two water leaks inside her home. She hired Roto-Roter Services Company to remediate the water damage and to repair the pipes. But Roto-Rooter did not meet Ms. White's expectations. So, she sued Roto-Rooter, alleging a breach of contract, a violation of the Ohio Consumer Sales Practices Act ("OCSPA"), a violation of Ohio's Home Solicitation Sales Act ("HSSA"), and unjust enrichment. Roto-Rooter responded with counterclaims for breach of contract and unjust enrichment.

Roto-Rooter now moves for summary judgment on all Ms. White's claims and on its counterclaim for breach of contract. (Mot., ECF No. 31.) Ms. White has not responded, and the time to do so has passed. For the reasons below, Roto-Rooter's Motion is **GRANTED**.

## I. STATEMENT OF FACTS

Ms. White discovered two water lines leaking inside her home on July 2, 2024. (White Dep. 10:25–11:1, ECF No. 29-1.) She found Roto-Rooter's information

online and called to learn more about the company's water mitigation services. (*Id.*, 11:8–18.) Roto-Rooter sent a field supervisor to inspect her property the same day. (Sakalo Decl. ¶ 4, ECF No. 31-1.)

Following its inspection, Roto-Rooter provided Ms. White with a detailed work order outlining the necessary water mitigation repairs along with a water mitigation agreement, which incorporated the work order. (*Id.* ¶ 5, Ex. 1 ("Work Order"), Ex. 4 ("Water Mitigation Agreement").) Both parties signed the Work Order and the Water Mitigation Agreement. (*See* Work Order and Water Mitigation Agreement.)

Shortly after starting repair work, Roto-Rooter's technicians discovered a compromised section of the kitchen sink water line that was inaccessible from inside the home. (Sakalo Decl. ¶ 16.) They determined excavation was required to access the water line. (*Id.*) Roto-Rooter then provided Ms. White with an excavation agreement that outlined the necessary repairs to remove and replace the compromised water line. (*Id.* ¶ 18, Ex. 5 ("Excavation Agreement").) Both parties signed the Excavation Agreement. (*See* Excavation Agreement.)

Concurrently with their excavation work, Roto-Rooter technicians continued water mitigation efforts inside Ms. White's home and discovered a damaged supply line in Ms. White's bathroom as well as extensive damage to the kitchen cabinets. (Sakalo Decl. ¶¶ 21–22.) The kitchen damage was classified as category 3 under the ANSI/IICRC S500-2021 Standards for Professional Water Damage Restoration, meaning the cabinets were highly contaminated and posed a significant health risk.

(*Id.* ¶ 23.) So, the technicians deemed the damaged cabinets unsalvageable and removed them. (*Id.* ¶¶ 22–24.)

Roto-Rooter finished its work and issued two invoices to Ms. White: one for $3,518.97 for water mitigation services and the other for $8,000 for excavation services, totaling $11,518.97. (*Id.* ¶ 26.) Ms. White filed a claim with her insurer, Erie Insurance. (White Dep., Def.'s Ex. G, ECF No. 29-2, PAGEID # 324.) Erie provided a $11,600.08 payment for interior damages, mitigation, and food compensation but denied coverage for plumbing repair and excavation under the policy. (*Id.*)

But Ms. White was not satisfied. According to her, Roto-Rooter did not do the work it said it would do. (*See, e.g.*, White Dep. 58:13–14.) She also says Roto-Rooter should not have removed her kitchen cabinets because they were waterproof and undamaged. (*Id.* 30:24–31:5, 38:1–12.) So, she refused to cash Erie's check because it was not enough to cover the damage Roto-Rooter allegedly caused. (*Id.*, 75:5–22.) To date, Ms. White has not paid Roto-Rooter.[1] (Sakalo Decl. ¶ 27.)

---

[1] The Court previously ordered the parties to show cause as to why this matter should not be remanded to state court for lack of subject matter jurisdiction based on the amount in controversy. (ECF No. 13.) In response, Ms. White argued the damage to her home coupled with her emotional and physical distress exceeds $75,000. (ECF No. 15.) Roto-Rooter agreed, adding that damages under the OCSPA are trebled. (ECF No. 14.) Because Ms. White could at least arguably be permitted to recover the amount she seeks, the Court finds the amount in controversy requirement is satisfied. *See Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005) ("[W]here as in this case state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement.").

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

Where, as here, the nonmoving party does not respond to a motion for summary judgment, "the district court cannot grant [the motion] without first

considering supporting evidence and determining whether the movant has met its burden." *Rogers v. Restore Contracting, Inc.*, 721 F. Supp. 3d 630, 638 (S.D. Ohio 2024) (Vascura, M.J.) (citation modified). That said, the trial court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992). "Rather … the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id*. And "[i]f such evidence supports a conclusion that there is no genuine issue of material fact … 'judgment [] shall be rendered forthwith ….'" *Id.* (citing Fed. R. Civ. P. 56(c)).

## III. ANALYSIS

Roto-Rooter moves for summary judgment on all Ms. White's claims: Count I for breach of contract; Count II under the OCSPA; Count III under the HSSA; and Count IV for unjust enrichment. (Mot., PAGEID # 428.) It also seeks summary judgment on its counterclaim for breach of contract. (*Id.*)

### A. Count I and Counterclaim I: Breach of Contract

Ms. White asserts that Roto-Rooter breached an oral contract that the parties made for plumbing services. (Compl. ¶¶ 29–32, ECF No. 2.) Roto-Rooter argues the parties' relationship was controlled by two written agreements, both of which Ms. White breached. (Mot., PAGEID ## 432–33, 438–39.)

To prevail on a breach of contract claim, "a party is required to demonstrate (1) a contract existed; (2) they fulfilled their obligations under the contract; (3) the

other party breached their obligations under the contract; and (4) damages resulted from this breach." *Wells v. Right Choice Contracting, LLC*, 280 N.E.3d 1, 9 (Ohio App. Ct. 2026). "The failure to establish any one of these essential elements is fatal to the cause of action." *Id.*

**1. Ms. White's Count I: Breach of Contract**

At the outset, and despite Ms. White's allegations to the contrary, there is no evidence that any oral contract existed between the parties here. Rather, it is undisputed that the parties entered into two written agreements: a Water Mitigation Agreement and an Excavation Agreement. (*See* White Dep., Defs.' Exs. D and E.) Nor is there any evidence that the parties contemplated other "plumbing services" not reflected in these two agreements; the Water Mitigation Agreement and the Excavation Agreement address all the services Roto-Rooter offered and performed. (*See, e.g.*, Sakalo Decl. ¶¶ 5, 13, 16–17, 28.) But even if an oral contract did exist, both written agreements expressly state they control over any prior inconsistent oral agreements or terms. (*See* Water Mitigation Agreement, PAGEID # 455 ("This is the entire agreement between us and *supersedes all prior oral or written agreements* relating to the subject matter." (emphasis added)); Excavation Agreement, PAGEID # 458 ("These terms are part of our contractual agreement and *will prevail over any inconsistent terms in any other agreement between us* … and may be modified only in a written instrument signed by both of us[.]" (emphasis added)).)

That said, even if Ms. White pleaded a breach of the written agreements, her claim would still fail because she has not identified how Roto-Rooter breached those

agreements. Rather, she only claimed in conclusory fashion that Roto-Rooter "breached the Contract by failing to perform Services and other breaches set forth in this Complaint." (Compl., ¶ 31.) The Court is left with only unrebutted evidence that Roto-Rooter performed its obligations fully under both written agreements. (*See* Sakalo Decl. ¶¶ 19, 25, 28.)

Roto-Rooter's Motion is **GRANTED** on Count I.

### 2. Roto-Rooter's Counterclaim I: Breach of Contract

Roto-Rooter has provided evidence that it fully performed both the Water Mitigation Agreement and the Excavation Agreement. (*See id.*) So, Ms. White owes $3,518.97 for water mitigation services and $8,000 for excavation services (*id.* ¶ 26; *see also* Water Mitigation Agreement and Excavation Agreement); her failure to pay breaches the contracts. (Sakalo Decl. ¶ 27.)

Roto-Rooter's Motion is **GRANTED** on Counterclaim I. Roto-Rooter is entitled to $11,518.97 in damages plus prejudgment interest under Ohio Revised Code § 1343.03(A). Interest begins to accrue when the money is "due and payable," which is a factual determination subject to the Court's discretion. *Morales v. Derricks Concrete LLC*, No. 1:25-cv-69, 2025 WL 2970271, *8 (S.D. Ohio Oct. 22, 2025) (Cole, J.). But Roto-Rooter has not provided evidence of that date, so it is **ORDERED** to file a calculation of the amount of prejudgment interest to which it believes it is entitled within **SEVEN DAYS** of the date of this Opinion and Order.

### B. Count II: Violations of the OCSPA

Ms. White asserts in Count II that Roto-Rooter violated the OCSPA by committing unfair, deceptive, and unconscionable acts. (Compl. ¶¶ 39–40.)

"The OCSPA prohibits suppliers from committing an 'unfair or deceptive act or practice' or an 'unconscionable act or practice … in connection with a consumer transaction.'" *Detrick v. KCS Int'l Inc.*, 781 F. Supp. 3d 588, 618 (N.D. Ohio 2025) (citing Ohio Rev. Code §§ 1345.02–03). "Unfair or deceptive consumer sales practices are defined as those that mislead consumers about the nature of the product they are receiving, while unconscionable acts or practices relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Szep v. General Motors LLC*, 491 F. Supp. 3d 280, 297 (N.D. Ohio 2020) (citation modified).

According to the Complaint, Roto-Rooter (1) misrepresented Ms. White's repair needs, (2) performed unauthorized work, and (3) failed to meet the contractual requirements outlined in the OCSPA and the HSSA. (Compl. ¶ 39.) But the Work Order (which was incorporated into the Water Mitigation Agreement) and the Excavation Agreement outlined Roto-Rooter's proposed repairs. (*See* Work Order, Water Mitigation Agreement, and Excavation Agreement.) Ms. White signed both agreements, indicating her agreement with the repair needs represented therein. (*Id.*) And the unrebutted evidence shows that Roto-Rooter performed those repairs. (*See* Sakalo Decl. ¶ 28 ("Roto-Rooter did not perform any work that was not authorized by the Water Mitigation Agreement or the Excavation Agreement.").) There is no evidence to suggest Roto-Rooter violated the OCSPA.

Roto-Rooter's Motion is **GRANTED** on Count II.

### C. Count III: Violations of the HSSA

Ms. White alleges Roto-Rooter violated the HSSA by failing to present her with a written agreement, failing to provide her with a notice of cancellation, failing to orally inform her of her right to cancel, and by commencing services during which time she was permitted to cancel. (Compl. ¶¶ 45–48.)

"The HSSA seeks to decrease high-pressure sales tactics that are sometimes employed during in-home solicitations by providing consumers with a cooling-off period within which the transaction may be cancelled." *Garber v. STS Concrete Co., L.L.C.*, 991 N.E.2d 1225, 1230–31 (Ohio App. Ct. 2013). "The HSSA provides exceptions in a number of circumstances[.]" *Id.* at 1231. One such exception is when "[t]he buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale." Ohio Rev. Code § 1345.21(A)(4). Roto-Rooter argues that exception applies here.

Ms. White called Roto-Rooter after discovering water leaks in her home. (White Dep. 10:19–24.) Roto-Rooter has several locations throughout the state, including in Columbus, Ohio, all of which are open to the public. (Sakalo Decl. ¶ 2); *see Clemens v. Duwel*, 654 N.E.2d 171, 176 (Ohio App. Ct. 1995) ("[A]s a general rule in keeping with the policy behind the R.C. 1345.21(A)(4) exception, a 'business establishment' should be a business location which is open to the general public."). A customer can enter any location and purchase the same services Ms. White purchased. (*Id.*) So, the exception applies.

Roto-Rooter's Motion is **GRANTED** on Count III.

### D. Count IV: Unjust Enrichment

Lastly, Ms. White claims Roto-Rooter was unjustly enriched by obtaining a lien on her home for its services. (Compl., ¶ 52.)

"To prevail on a claim of unjust enrichment, a plaintiff must show: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Padula v. Wagner*, 37 N.E.3d 799, 813 (Ohio App. Ct. 2015) (citation modified). But "a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Forsman v. Silverstein*, No. 2:22-cv-4415, 2025 WL 240920, *12 (S.D. Ohio Jan. 17, 2025) (Morrison, C.J.) (citation omitted).

As discussed above, the parties had two express contracts that addressed their business relationship. Thus, Ms. White's unjust enrichment claim fails.

Roto-Rooter's Motion is **GRANTED** on Count IV.[2]

## IV. CONCLUSION

For the reasons above, Roto-Rooter's motion for summary judgment (ECF No. 31) is **GRANTED**. The Court **AWARDS** Roto-Rooter $11,518.97 in damages. Roto-

---

[2] Roto-Rooter also brought a counterclaim for unjust enrichment; but it did not move for summary judgment on that claim. That said, because Roto-Rooter is entitled to judgment on its counterclaim for breach of contract, its counterclaim for unjust enrichment is **DENIED as moot**. *See COD Properties Ohio, LLC v. Black Tie Title, LLC*, No. 113730, 2025 WL 1984004, *14 (Ohio App. Ct. July 17, 2025) ("It is well-settled that a finding of liability on a claim for breach of contract renders moot a claim for unjust enrichment or promissory estoppel.").

Rooter is also entitled to prejudgment interest; Roto-Rooter is **ORDERED** to file a calculation of the amount of prejudgment interest it believes it is entitled to within **SEVEN DAYS** of the date of this Opinion and Order. Ms. White's Motion to Strike (ECF No. 33) and Motion to Withdraw Jury Demand (ECF No. 35) are **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**